UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SEUN INTA,                          )
                                    )
          Petitioner                )
                                    )
     v.                             )          No. 4:03 CV 1654 DDN
                                    )
DAVE DORMIRE,                       )
                                    )
          Respondent.               )

## MEMORANDUM OPINION

This matter is before the court upon the petition of Missouri state prisoner Seun Inta for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Upon review of the record, the court denies habeas relief.

On January 10, 2001, petitioner Seun Inta pled guilty in the Circuit Court of Jefferson County to murder in the second degree, armed criminal action, assault in the first degree, and burglary in the first degree. (Doc. 8, Ex. B at 51.) He was sentenced to a term of 30 years imprisonment for the murder, a consecutive sentence of 20 years for the armed criminal action, 15 years for the assault and 15 years for the burglary, with the assault term to be served concurrently with the murder and the armed criminal action, and the burglary term to be served concurrently with the three other terms. (Id., Ex. B at 52.)

Petitioner moved on June 25, 2001, for post-conviction relief under Mo. Sup. Ct. R. 24.035, on the grounds that his guilty plea was a result of ineffective assistance of counsel. (Id., Ex. B at 7-8.) The motion was denied on April 10, 2002, following a hearing. (Id., Ex. B at 34-40.) Petitioner appealed the denial, but the Missouri Court of Appeals affirmed. (Id., Ex. E.)

Petitioner then moved for rehearing or transfer to the Missouri Supreme Court but was denied. (_Id_., Exs. F, G.)

Petitioner commenced this federal habeas action under 28 U.S.C. § 2244(d)(1) on November 17, 2003, asserting he received ineffective assistance of counsel and was denied due process, because:

    (1) His trial counsel, Jefferson County Public Defender Lisa Clover, failed to pursue a possible self-defense theory or investigate witnesses whom petitioner made known to her.

    (2) His plea was based on his lawyer's misrepresentation of the amount of time to be served under the plea agreement; thus, his guilty plea was not knowing and voluntary.

(Doc. 2, attachment.)

With leave of court, petitioner filed an amended petition, asserting the following additional grounds for federal habeas corpus relief:

    (3) Petitioner possessed meager English speaking or understanding skills at the time of his guilty plea.

    (4) Petitioner was misstated by the interpreter during interrogation by attorney Clover.

    (5) Petitioner's appointed post-conviction relief counsel failed to include in the amended post-conviction relief motion the grounds for relief that petitioner alleged in his pro se motion.

    (6) Petitioner was represented at the guilty plea proceeding by an assistant public defender who had not been originally involved in the case and who advised petitioner to simply say only "Yes" at the plea hearing.

    (7) Petitioner was not able to effectively provide any information to attorney Clover.

    (8) Petitioner was unable to understand the consequences of a guilty plea.

    (9) Petitioner believed that going to trial would result in an automatic death penalty.

(Doc. 16 at 1.)

## **BACKGROUND**

During the guilty plea hearing, the prosecutor offered the following account of what the state would prove at trial. On April 7, 2000, around 12:30 a.m., Seun Inta illegally entered the home of Phonesebanh Inta, his estranged wife, at 954 Shelley Court in Fenton, Missouri. (Doc. 8, Ex. B at 89-90.) He went upstairs to his wife's bedroom door with a .38 caliber handgun. Mrs. Inta heard a noise at the door and, going toward the noise, found Mr. Inta standing in the hallway with the handgun. (Id. at 92.) He stated that he intended to kill her and her boyfriend, Mr. Chomsavanh, who was with her. Petitioner shot Mr. Chomsavanh twice, then Chomsavanh went downstairs and came back with a knife. (Id. at 93.) Petitioner then shot him one to two more times. Mrs. Inta attempted to flee and petitioner began to choke her by putting his foot on her neck. The Intas' two daughters, ages eight and five, began screaming for him not to kill their mother. (Id. at 94.) Petitioner then shot Mr. Chomsavanh twice more. Mrs. Inta then fled the home, and the petitioner drove away in his truck, which was soon located by police after a 9-1-1 call. When police arrived, petitioner immediately admitted that he shot Mr. Chomsavanh. Petitioner told the police that two weeks before the incident he asked his wife whether she was seeing anyone else and she said No. Petitioner told the police that he then told her that he would kill her if he found out she had a boyfriend. Thereafter, he went to Texas, returned, entered his wife's residence without her knowledge and saw photographs of her and their children with a man he had known in Texas. He left the residence and returned that night and found the same man in bed with his wife. Petitioner then described the incident to the police. (Id. at 95-99.)

When asked by the court if the prosecutor's statement of facts

was correct, petitioner stated that he shot Chomsavanh only after he returned from the kitchen with a knife; otherwise, the prosecutor's statement of facts was accurate. Petitioner told the judge that he believed that the state's evidence would be sufficient and he pled guilty to all the charges. (Id. at 102-03.)

At the plea hearing, the prosecutor stated the plea bargain. The plea agreement was that, in consideration for petitioner's guilty pleas to the charged offenses, the state would recommend sentences of 30 years for the Count 1 second degree murder, 20 years for the Count 2 armed criminal action, 15 years for the Count 3 first degree assault, and 15 years for the Count 4 burglary, with Count 2 being served consecutively to Count 1, and Counts 3 and 4 concurrently with Count 1. (Id. at 113-14.) The court asked petitioner whether he understood what the state's recommendation was. Petitioner answered in the affirmative. (Id. at 114).

The court then asked petitioner whether he understood that the law requires that he serve at least 85 percent of the sentence on Count 1, or 25 and one-half years, and then serve at least three years on Count 2. The court asked petitioner whether he understood that he would then be required to serve at least 28 and one-half years before he would be eligible for parole. Petitioner answered in the affirmative. (Id. at 115-16.) Petitioner was then sentenced as set forth above.

## DISCUSSION

### EXHAUSTION OF STATE REMEDIES AND PROCEDURAL BAR

A state prisoner must exhaust all remedies available in the state courts on each ground before a petition for a writ of habeas corpus may be considered by federal court. 28 U.S.C. § 2254(b)(1)(A); see Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). Upon the court's review of the

respondent's exhibits, it is satisfied that petitioner has exhausted all his available state remedies as to Grounds 1 and 2, because he alleged them in his motion for post-conviction relief and the denial of that motion was affirmed on direct appeal. (Doc. 8, Exs. B at 7-10, E.) Further, although petitioner has not raised Grounds 3 through 9 in the Missouri state courts, there is now no non-futile state remedy for him to pursue for them. <u>Coleman</u>, 501 U.S. at 731.

Petitioner's failure to raise Grounds 3 through 9 in the state courts erects a procedural bar to their being considered by this court. <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149-51 (8th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1010 (1998). Here, petitioner's Grounds 3 through 9 have never been presented in the state trial and appellate courts. (Doc. 8, Ex. B at 7-14, 29-33; Doc. 8, Ex. C at 8-15.)

However, petitioner may still be entitled to federal habeas review of Grounds 3 through 9, if he can demonstrate legally sufficient cause for his failure to raise them in state court and actual prejudice from that failure, or if he can demonstrate that the failure by this court to review these grounds would result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. To establish cause for procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural requirements. <u>Id</u>. at 750-52. Here, because petitioner has not established any factor external to his case that impeded his efforts, he cannot establish cause.

A fundamental miscarriage of justice would occur, if petitioner was actually innocent. <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).

Petitioner has not proffered any new, reliable evidence of his

actual innocence.  Therefore, this court is procedurally barred from reviewing Grounds 3 through 9.  For this reason, those grounds must be dismissed.

## STANDARD FOR REVIEW ON MERITS

The court now considers Grounds 1 and 2 on their merits.  An application for a writ of habeas corpus cannot be granted on a state court's decision on the merits of the claim unless the claim was (1) contrary to or involved an unreasonable application of federal law clearly established by the Supreme Court, or (2) based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(1), (2).

## GROUND 1

Petitioner alleges he received ineffective assistance of counsel, because his counsel failed to pursue a self-defense theory and failed to investigate a witness whom petitioner identified for this defense theory.

A claim of ineffective assistance of counsel in violation of the Sixth Amendment must meet a two-pronged test: petitioner must show (1) that counsel's performance was unreasonably deficient, and (2) that the deficient performance resulted in actual prejudice to petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984); Blackwell v. Graves, 349 F.3d 529, 532 (8th Cir. 2003).  This standard also applies to guilty pleas based on ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  In examining counsel's performance in hindsight, the court should "indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance." Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003)(quoting Bell v. Cone, 535 U.S. 685, 702 (2002)).  By statute, any determination of a factual issue made by a state court shall be

presumed to be correct unless the habeas petitioner can rebut the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner alleges that his counsel (1) failed to investigate a witness after receiving the contact information from petitioner and (2) otherwise failed to pursue the theory of self-defense. More specifically, petitioner alleges that he provided trial counsel information about Keo Southone, who could have testified that victim Chomsavanh had previously threatened to kill petitioner. (Doc 2. unnumbered page 5.) During the post-conviction motion hearing in circuit court, petitioner testified that Southone witnessed an occasion where the victim, armed with a gun, tried to kill petitioner at a "Laos Festival at the temple in Texas." (Doc. 8, Ex. A at 23-25.) During the same evidentiary hearing, petitioner also stated that he had notified trial counsel of the confrontation involving the victim and Southone. Id. Southone's testimony was not offered by petitioner at the hearing. (Doc. 8, Ex B at 38.)

The circuit court found petitioner's testimony at the post-conviction hearing not credible. (Doc. 8, Ex. B at 36-38.) On the other hand, the circuit court found trial counsel's hearing testimony credible. Id. The circuit court determined that petitioner did not provide the witness's address and did not disclose to trial counsel the asserted previous confrontation with the victim. Id. Trial counsel testified in the circuit court that she did not pursue a theory of self-defense, because she determined that the state had sufficient evidence of first degree murder. (Doc. 8, Ex. B at 25.) Other than his own testimony, petitioner offered no evidence to this court to rebut the presumption of correctness accorded under 28 U.S.C. § 2254(e)(1).

An error by counsel does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the outcome. Cf., United States v. Morrison, 449 U.S. 361, 364-65

(1981).   In examining an analogous situation regarding an attorney's alleged failure to investigate potentially exculpatory evidence similar to that which petitioner claims the witness may have given, the Supreme Court found:

> [T]he determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.   This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

Hill, 474 U.S. at 59.

Petitioner argues "the jury could have been instructed on a lesser offense and the Court would have heard all facts that pertain to the situation." (Doc. 2, attachment.)  Thus, he alleges there was the likelihood of a different result at trial which would have been a reason for not pleading guilty.

In this case, it cannot be said that the witness's testimony would have changed the outcome of petitioner's proceedings. Petitioner himself testified in the post-conviction motion hearing that his attorney told him, "if you go to [trial], you have no chance of winning because [of] the many things you did wrong.  You have the gun, you have the wig, you disguise yourself and then you have no way to win." (Doc. 8, Ex. A at 40.)   Ms. Clover also testified she believed self-defense was not a viable theory of defense, because of the petitioner's copying his wife's key that was taken from his daughter's backpack, petitioner's taking of photographs of the house, petitioner's taking off his shoes before he entered the house, and petitioner's possession of a wig, gun, rope, and handcuffs.  (Id., Ex. A at 52-53.)   Even if Ms. Clover was deficient in failing to pursue a self-defense theory, which she was not, petitioner has failed to demonstrate that he was prejudiced by counsel's failure to interview the witness.   There is

no reason to believe that the witness's testimony would have changed the expected outcome of a trial, and thus counsel's recommendation to plead guilty was reasonable.

Accordingly, Ground 1 is without merit.

## GROUND 2

Ground 2 alleges that defense attorney Clover incorrectly advised him that a guilty plea would ensure him no more than 30 years in prison before he would be paroled. He asserts that this misinformation constituted ineffective assistance of counsel in violation of the Sixth Amendment, and prevented him from making a knowing and voluntary plea, in violation of the Fourteenth Amendment. (Doc. 8, Ex. B at 7.)

Again, petitioner must show: (1) that counsel's performance was unreasonably deficient, and (2) that counsel's deficient performance resulted in actual prejudice to petitioner. Strickland, 466 U.S. at 687. Petitioner must show that, but for counsel's deficient performance, he would not have pled guilty. Hill, 474 U.S. at 58.

Here, petitioner has not proffered any evidence that his counsel misadvised him about the potential sentence. The circuit court determined that Ms. Clover's testimony was more credible and found as fact that she advised him on the proper sentences. (Doc. 8, Ex. B at 24-25).[1]

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 689. Since the record shows that a first degree murder charge could have been brought against

---

[1]Furthermore, as set forth above, during the guilty plea proceeding, the prosecutor advised the court in petitioner's presence, about the ranges of punishment for the offenses and the plea bargain recommendation of the state, and petitioner affirmed to the court that he understood these potential sentences.

petitioner, it is not unreasonably deficient for counsel to advise petitioner to plead to murder in the second degree.

Moreover, even if attorney Clover's advice had been otherwise, about his parole eligibility date, petitioner has failed to demonstrate reasonable grounds to believe that he would have gone to trial and not pled guilty. <u>Hill</u>, 474 U.S. at 60.

Therefore, the record shows that defense counsel's advice was reasonable and that petitioner has failed to demonstrate that he was prejudiced by it. Ground 2 is without merit.

For these reasons, the habeas petition of Seun Inta will be denied and the action dismissed. An appropriate order is issued herewith.


<br>

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**


Signed this day, July 20, 2005.